**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
                                          x
BEATRICE CODIANNI-ROBLES,                 :
Prison #11866-014                         :
FCI Danbury                               :
                    Plaintiff,            :
                                          :
                                          :
v.                                        :
                                          :
UNITED STATES OF AMERICA                  :     JANUARY 7, 2005
                                          :
                                          :
_____ x
```

## SECOND AMENDED COMPLAINT

Plaintiff Beatrice Codianni-Robles, through counsel, amends her Complaint, with the consent of defendant's counsel, pursuant to Rule 15(a), Fed. R. Civ. P., as follows:

### I.    INTRODUCTION

1.    This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C.A. § 2671 et seq., to seek redress for injuries suffered by plaintiff Beatrice Codianni-Robles, an inmate incarcerated at the Federal Correctional Institute in Danbury, Connecticut, as a result of the negligent or wrongful acts or omissions of the defendant United States of America.

### II.    JURISDICTION

2.    Jurisdiction of this Court is invoked under the provisions of 28 U.S.C. §§ 1331 and 1346(b).

### III.    PARTIES

3.    At all relevant times, plaintiff Beatrice Codianni-Robles was, and still is,

a citizen of the United States residing in the State of Connecticut and a prisoner incarcerated at FCI Danbury, with the exception of a several month period commencing on or about September 30, 1998 when plaintiff was incarcerated at FMC Carswell in Texas.

4.      At all relevant times, plaintiff was in the custody and control of the Bureau of Prisons [BOP], its agents, servants and employees.  The BOP is an agency of the defendant United States of America [USA].

**CLAIM FOR RELIEF**

COUNT ONE [FEDERAL TORT CLAIMS ACT]

1-4.      Paragraphs 1-4 of this complaint are hereby made part of the First Count as if fully set forth herein

5.      On or about September 12, 1998, Ms. Codianni-Robles experienced pain in her left leg while she was jogging.  After 4 p.m. count, Ms. Codianni-Robles went to the prison hospital where she was informed that she had a muscle strain.

6.      Ms. Codianni-Robles' medical record at FCI Danbury reflects that, on or about Monday, September 14, 1998, Ms. Codianni-Robles sought medical attention at the prison hospital and reported that she was having difficulty walking and standing.  Ms. Codianni-Robles was prescribed anti-inflammatory medication.

7.      Ms. Codianni-Robles reported for sick call on or about September 18 and September 21, 1998 and again sought treatment for pain in her left leg and for difficulty she was experiencing walking and standing.

2

8.    On September 24, 1998, as Ms. Codianni-Robles was leaving the dining hall, she was unable to walk due to pain in her leg and requested that the officers outside the dining hall call the hospital.  Ms. Codianni-Robles was provided with a pair of crutches.

9.    During this period Ms. Codianni-Robles was given a number of "idles," indicating that she should be excused from work, because she was in pain and having difficulty walking and standing.

10.    On or about September 26, 1998, Ms. Codianni-Robles made an emergency call to the hospital.  She was admitted to the infirmary and ordered to stay off of her left leg.  The medical records for September 27, 1998, state that Ms. Codianni-Robles is non-ambulatory, limping without crutches and suffering left leg pain.

11.    On September 28, 1998, x-rays were taken of Ms. Codianni-Robles' left leg revealing an oblique non-displaced fracture of the base of her left femoral neck.

12.    A staff physician at FCI Danbury received a telephone report on September 28, 1998 informing him that the x-rays of Ms. Codianni-Robles' leg revealed a stress fracture of the neck of her left femur.

13.    The staff physician noted in Ms. Codianni-Robles' medical record that the fracture required internal fixation to prevent progression to full thickness fracture and that Ms. Codianni-Robles' transfer to FMC Carswell was in progress.

14.    On September 28, 1998, it was specifically noted in Ms. Codianni-Robles'

medical record that she was not permitted to ambulate without crutches and that she was to remain under observation in the infirmary until medically cleared.

15.    On or about September 28, 1998, members of the prison administration and staff met with Ms. Codianni-Robles and informed her that surgery was required to stabilize her leg, that she would be transferred immediately to an appropriate location for the surgery to be performed, and that she had no choice but to have the surgery because it was required to avoid permanent or more serious damage. Ms. Codianni-Robles was informed that she was being kept in the infirmary to avoid further damage to her leg and she was instructed to stay off and avoid putting any pressure on her leg because the bone could snap.

16.    FCI Danbury arranged for Ms. Codianni-Robles to be transferred to FMC Carswell in the early morning on September 30, 1998. The medical transfer papers prepared by a staff physician specified that the "goal" of the transfer was "prevention of total fracture and rehabilitation of hip."

17.    The medical transfer form specified that Ms. Codianni-Robles required ambulatory assistance, but did not indicate what type of assistance was needed.

18.    Defendant was responsible for establishing an effective medical system that included reasonable staffing, facilities, equipment and/or procedures in order to address inmates' serious medical needs and to provide appropriate treatment of serious medical conditions.

19.    At approximately 4:30 a.m. on September 30, 1998, a member of the correctional

4

staff woke Ms. Codianni-Robles to prepare her for transport to FMC Carswell.

20.    After she was searched in preparation for transport, staff members shackled Ms. Codianni-Robles and handcuffed her wrists tightly to a chain around her waist. Staff issued Ms. Codianni-Robles ill-fitting "bus shoes" to wear during the transport.

21.    After Ms. Codianni-Robles was shackled, supervisory staff appeared in the transport area and instructed defendants to remove the shackles. Staff did not, however, remove the handcuffs or detach them from the chain around plaintiff's waist.

22.    Because plaintiff's wrists were handcuffed tightly to a chain around her waist, Ms. Codianni-Robles was unable to use her crutches or even to maintain her balance.

23.    Despite the fact that plaintiff's medical condition required that she avoid any weight bearing at all on her left leg and that the medical transport order stated that plaintiff required ambulatory assistance, defendant did not provide Ms. Codianni-Robles with ambulatory assistance but rather required her to hop to the transport van.

24.    When she was hopping across the threshold of the sally port, Ms. Codianni-Robles tripped and fell toward the ground. Ms. Codianni-Robles suffered immediate, excruciating pain. She screamed that she was hurt and pleaded to be taken immediately to Danbury Hospital.

25.    Staff ignored plaintiff's pleas and instead proceeded with the transport to FMC Carswell, which required Ms. Codianni-Robles without a stretcher, wheelchair or crutches to get into a van, ride in the van from Danbury to Westchester Airport in White Plains, New York, get out of the van and up into a small, non-commercial jet. Throughout the trip, including

5

during the flight from New York to Fort Worth, Texas, plaintiff was required to sit up and, because her wrists were chained to her waist, plaintiff was unable even to use her hands to steady herself.

26.    Throughout the entire trip, Ms. Codianni-Robles was unable to stabilize her leg and she suffered excruciating and unrelenting pain and anxiety.

27.    When Ms. Codianni-Robles was received at FMC Carswell on September 30, 1998 at approximately 12:00 p.m., x rays were taken which revealed that the fracture of Ms. Codianni-Robles left femur had become displaced.

28.    Ms. Codianni-Robles underwent surgery the next morning to repair the intertrochanteric fracture of her left hip.  The procedure entailed open reduction and internal fixation of the left hip fracture with a compression hip screw and four-hole side plate with compression screw.  The Operative Report Brief History prepared by the surgeon states: "The patient is a 50-year-old female who evidently has a stress fracture of the left hip and sustained an additional fall onto this left hip and complained of severe pain, and x-rays were obtained, and an intertrochanteric fracture of the left hip was noted, and it was displaced."

29.    As a result of defendant's agents', servants' and employees' negligent or wrongful acts or omissions, the non-displaced stress fracture which Ms. Codianni-Robles had suffered became displaced and she suffered painful, incapacitating and permanent disabling injuries including the shortening of her left leg, a limp, difficulty ambulating, physical pain and severe emotional distress.

30.    Defendant, acting through its agents servants and employees, was negligent in its treatment of plaintiff in that it failed to exercise the degree of care, skill and/or diligence employed by a medical care provider under similar circumstances by failing to exercise its responsibility for establishing an effective medical system under the circumstances then and there existing, in that it:

    a.    failed to establish transport procedures that were reasonably calculated to provide for plaintiff's medical safety;

    b.    failed to train and/or instruct the staff in transport procedures that were reasonably calculated to provide for plaintiff's medical safety;

    c.    failed to provide equipment that was reasonably necessary to transport plaintiff safely;

    d.    failed to make reasonable arrangements for plaintiff to be transported safely.

31.    Defendant, acting through its agents servants and employees, was negligent in its treatment of plaintiff in that it failed to exercise the degree of care, skill and/or diligence employed by a medical care provider under similar circumstances, in that it:

    a.    failed to order that plaintiff not be allowed to bear weight on her left leg;

    b.    failed to give adequate direction and/or instruction to the transport staff concerning the fact that plaintiff could not bear weight on her left leg;

7

    c.      failed to order that plaintiff be transported on a stretcher to avoid weight bearing on her left leg;

    d.      failed to order strict bed rest for plaintiff;

    e.      failed to provide for adequate medical assistance during plaintiff's transport;

    f.      allowed plaintiff's fracture to become displaced.

32.     Defendant, acting through its agents servants and employees, was negligent in its treatment of plaintiff in that it failed to exercise the degree of care, skill and/or diligence employed by a medical care provider under similar circumstances, in that it:

    a.      transported plaintiff to FMC Carswell in manner that disregarded her known and serious medical needs and condition;

    b.      failed to meet plaintiff's basic and known medical needs;

    c.      failed to transport plaintiff safely in accordance with her medical condition;

    d.      required plaintiff to move under circumstances that were likely to make her fall and/or to place weight on her left leg;

    e.      failed to provide plaintiff with appropriate ambulatory assistance during the transport;

    f.      failed to follow the transport direction that plaintiff be provided ambulatory assistance;

8

g.    failed to obtain and/or follow appropriate medical direction concerning the

transport requirements.

33.    Plaintiff has satisfied the prerequisites for filing a claim set forth under 28

U.S.C.A. § 2675 in that she filed an administrative complaint with the Federal Bureau of Prisons

on or about September 26, 2000 and received a release to sue dated March 5, 2001.

WHEREFORE the plaintiff claims:

A.    Compensatory and punitive damages;

B.    Such other relief as this Court deems just and reasonable.

THE PLAINTIFF, BEATRICE CODIANNI-ROBLES

By:_____
Kathryn Emmett
Emmett & Glander
45 Franklin Street
Stamford, CT  06901
(203) 324-7744
Federal Bar No. CT05605

9

## CERTIFICATION

      This is to certify that a copy of the foregoing was mailed, postage prepaid, this 7th day of January, 2005, to:

AUSA Alan Marc Soloway
157 Church Street
New Haven, CT  06510

Kathryn Emmett